

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREIGHT HANDLER ENTERPRISES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ADVANTAGE LOGISTICS MIDWEST, INC., ) <br> ) <br> Defendant. ) | Civil Action No.: 05 C 4813 <br><br> Suzanne B. Conlon, Judge |

## **MEMORANDUM OPINION AND ORDER**

Freight Handler Enterprises, Inc. brings a four-count complaint against Advantage Logistics Midwest, Inc. ("ALM"),[1] alleging breach of contract (Count I), interference with prospective economic advantage (Count II), interference with contract (Count III), and racial discrimination (Count IV). ALM moves to dismiss Counts II and III. For the reasons set forth below, the motion is denied.

## BACKGROUND

The following facts are derived from the amended complaint. Freight Handler is an Illinois corporation wholly owned by four principals, who are African-Americans. Am. Compl. ¶ 1. Freight Handler provides unloading services to grocers and delivery companies. *See* Am. Compl. ¶¶ 12-13. ALM is a Delaware corporation operating a grocery distribution center in Oglesby, Illinois. Am. Compl. ¶¶ 2, 11.

---

[1] ALM pleads that SUPERVALUE INC. is its successor by merger. This case may continue against ALM. Fed. R. Civ. P. 25(c); *see also Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985) (district courts have discretion on whether to substitute parties).

Freight Handler and ALM entered into a contract in 1998. Am. Compl. ¶ 15. Freight Handler agreed to unload goods from delivery trucks and review them for ALM. *Id.* In return, ALM was to allow Freight Handler access to its docks at the Oglesby center so that Freight Handler could provide services to grocers and delivery companies. Am. Compl. ¶¶ 16-20. Under the contract, the relationship between Freight Handler and ALM was exclusive and neither company was permitted to hire the other's employees. Am. Compl. ¶¶ 23, 63-64. The contract did not specify its duration, but provided a 30-day termination notice. Am. Compl. ¶ 22.

Freight Handler performed its services under four arrangements: live delivery, drop-off, subcontract, and tote retrieval. Am. Compl. ¶ 24. For live delivery and drop-off, Freight Handler directly contracted with delivery companies. Am. Compl. ¶¶ 25-26. The subcontract arrangement was unique to deliveries from two grocers. Am. Compl. ¶ 27. These two grocers paid ALM to unload their goods and ALM subcontracted the unloading work to Freight Handler. *Id.* Freight Handler charged ALM a flat fee, which was discounted in consideration for the use of ALM's docks. *Id.* Tote retrieval involved empty plastic bin totes from ALM's stores at the outgoing dock. Am. Compl. ¶ 28. For a flat fee per truck, Freight Handler unloaded the totes for ALM, and ALM removed the totes from the outgoing dock. Am. Compl. ¶ 28. In sum, Freight Handler's operation depended on ALM's cooperation.

Freight Handler and ALM apparently performed their respective obligations without dispute when Freight Handler's principals lived in Alabama and delegated the day-to-day operation to their non-black employees. Am. Compl. ¶ 29. But disputes began to arise in August 2002 when Freight Handler's principals assumed direct supervision of its operation at the Oglesby center. Am. Compl. ¶ 30. Freight Handler alleges that ALM's employees have made berating remarks against Freight

Handler's principals and refused to cooperate with them. Am. Compl. ¶¶ 34-38. Freight Handler alleges that ALM knew of Freight Handler's contractual relationships with grocers and delivery companies and that ALM intentionally interfered with these relationships. Am. Compl. ¶ 74. Specifically, Freight Handler alleges ALM committed the following acts to prevent Freight Handler from performing its contracts with grocers and delivery companies:

 a. Failing to move inspected goods off the docks (both incoming and outgoing) and into their proper storage places;
 b. Moving goods into places which served to block the docks; and
 c. Depriving Freight Handler of the equipment it needed to do the job[,] including fork lifts.

Am. Compl. ¶ 34; *see also* Am. Compl. ¶ 74, 79, 80 (similar allegations). ALM's conduct, allegedly motivated by racial *animus*, interfered with Freight Handler's ability to perform its contracts with grocers and delivery companies, resulting in damages. Am. Compl. ¶¶ 34-38, 75-76, 81. The disputes came to an end on August 23, 2002 when ALM gave its termination notice to Freight Handler. Am. Compl. ¶ 36.

Freight Handler sues for breach of contract (Count I), interference with prospective economic advantage (Count II), interference with contract (Count III), and racial discrimination (Count IV). Moving to dismiss Counts II and III, ALM argues that Freight Handler has failed to allege all elements of these claims and that these claims may not be based on at-will contracts.

## DISCUSSION

### I. Motion to Dismiss Standard

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under the rule is warranted only if 'no relief could be granted under any set of

3

facts that could be proved consistent with the allegations.'" *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) (quoting *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). In ruling on a motion to dismiss, the court must accept the well-pleaded allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Cler*, 423 F.3d at 729. To survive a motion to dismiss, a complaint "need not plead particular legal theories or particular facts in order to state a claim." *DeWalt*, 224 F.3d at 612. "All that is required is 'a short and plain statement . . . that will give the defendant fair notice'" of the nature and basis of the claim. *Id.* (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).

## II. Legal Framework

Both parties' briefs assume that Illinois law governs. The court applies Illinois law on substantive issues. *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 39 F.3d 138, 142 n.2 (7th Cir. 1994) (because the parties did not raise a choice of law issue, the district court properly applied forum law). Procedural issues, however, are governed by federal rules. *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997).

Under Illinois law, interference with contract and interference with prospective economic advantage share similar elements. But interference with contract requires a more solid economic expectancy. *See Belden Corp. v. Internorth, Inc.*, 413 N.E.2d 98, 101-02 (Ill. App. Ct. 1st Dist. 1980). Generally, a plaintiff suing for interference with contract must establish five elements: (1) plaintiff has an enforceable contract with a third party; (2) defendant knows of this contract; (3) defendant intentionally and wrongfully induces the third party to breach the contract; (4) the third party breaches as a result of defendant's inducement; and (5) plaintiff suffers damages. *HPI Health*

4

*Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). For a plaintiff whose economic expectancy cannot satisfy the first element, interference with prospective economic advantage may be available. The elements for this tort generally include: (1) plaintiff reasonably expects to enter a business relationship; (2) defendant knows of this expectation; (3) defendant purposefully interferes to prevent the expectation from being materialized; and (4) plaintiff suffers damages as a result of defendant's interference. *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 370 (Ill. 1998). Against these general requirements, the court tests the sufficiency of Freight Handler's amended complaint.

## III. Interference with Contract (Count III)

ALM does not dispute that Freight Handler sufficiently pleads the first, second, and fifth elements set forth in *HPI Health Care*, 545 N.E.2d at 676. *See* Am. Compl. ¶ 78 (Freight Handler's contracts with sellers and delivery companies); Am. Compl. ¶ 74 (ALM's knowledge of Freight Handler's contracts); Am. Compl. ¶ 81 (Freight Handler's damages). ALM moves to dismiss on two grounds: (1) Freight Handler has failed to allege that a third party was induced to breach a contract with Freight Handler; and (2) Freight Handler's third-party contracts were terminable at-will and thus, did not form a basis for an interference with contract claim. Neither ground, however, justifies dismissal.

Illinois law does not require actual breach by a third party in an interference with contract claim. The Seventh Circuit recognizes that conduct "rendering [plaintiff's] performance impossible" may suffice. *George A. Fuller Co. v. Chicago College of Osteopathic Med.*, 719 F.2d 1326, 1331 (7th Cir. 1983) (citing Illinois cases). Under this rule, liability for interference with contract may arise

where defendant's conduct "made it impossible" for plaintiff to retain a contract with third parties. *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1345 (7th Cir. 1992) (a jury verdict can be sustained without evidence of breach). An interference with contract claim in Illinois "encompasses the situation in which the defendant prevents the plaintiff from performing the contract." *Id.* at 1344 (quoting *Scholwin v. Johnson*, 498 N.E.2d 249, 255 (Ill. App. Ct. 2d Dist. 1986), *appeal denied*, 505 N.E.2d 362 (Ill. 1987)). Freight Handler's allegations match this situation – ALM "forced Freight Handler[] to be unable to perform it's [*sic*] contracts with the third party suppliers and truck lines." Am. Compl. ¶ 81. Freight Handler's interference with contract claim withstands a motion to dismiss because relief could be granted under a set of facts consistent with these allegations.

Arguing the contrary, ALM cites *Comtel Technologies, Inc. v. Paul H. Schwendener, Inc.*, No. 04C3879, 2005 WL 433327 (N.D. Ill. Feb. 22, 2005). But *Comtel* is distinguishable. Comtel brought an interference with contract claim against NuLine, a competitor, alleging that NuLine induced PHS to breach PHS' contract with Comtel. *Id.* at **1-2. The complaint, however, alleged that PHS on its own – without any inducement by NuLine – decided to breach its contract with Comtel. *Id.* at *11. Finding no wrongful conduct by NuLine, the court dismissed Comtel's claim. *Id.* In contrast, Freight Handler pleads intentional misconduct perpetrated by ALM – blocking the docks and denying access to equipment. Am. Compl. ¶¶ 34, 74. *Comtel* is inapplicable. Freight Handler adequately alleges ALM's misconduct, even though Freight Handler makes no specific allegation that the misconduct caused a third party's breach. *See DeWalt*, 224 F.3d at 612 (fair notice to defendant is sufficient).

ALM argues that because Freight Handler's third-party contracts are terminable at-will, they cannot form a valid basis for an interference with contract claim. It is true that "[u]nder Illinois law,

'a defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations.'" *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (internal brackets omitted). But this rule does not apply here because ALM's assumption is incorrect – no allegation supports a reasonable inference that Freight Handler's third-party contracts are terminable at-will. Freight Handler's contract with ALM is terminable at-will (Am. Compl. ¶ 22), but the amended complaint does not indicate Freight Handler and third parties were bound by similar contractual provisions. Freight Handler pleads that it "contracted with various suppliers and trucking lines for unloading services," without specifying the contracts' duration. Am. Compl. ¶ 78. Accordingly, the court cannot dismiss Freight Handler's claim based on ALM's assumption that the third-party contracts were at-will.

## IV. Interference with Prospective Economic Advantage (Count II)

As discussed above, Freight Handler must plead the four elements for an interference with prospective economic advantage claim: (1) Freight Handler's expectancy of a business relationship; (2) ALM's knowledge of this expectancy; (3) ALM's purposeful interference; and (4) damages to Freight Handler. *Dowd & Dowd, Ltd.*, 693 N.E.2d at 370. ALM does not challenge that Freight Handler sufficiently pleads the second and forth elements. *See* Am. Compl. ¶ 74 (ALM's knowledge of Freight Handler's expectation); Am. Compl. ¶ 76 (Freight Handler's damages). But ALM argues for dismissal on two bases: (1) Freight Handler had no reasonable expectation to continue its relationships with third parties because these relationships were terminable at-will; and (2) Freight Handler failed to allege that ALM directly pressured third parties to terminate the relationships. ALM's arguments are unpersuasive.

7

Again relying on *Cody*, ALM advances his assumption about the at-will nature of Freight Handler's third-party contracts. But ALM's reliance on *Cody* is misplaced. Cody sued his former employer for wrongfully inducing others to terminate Cody's new employment contracts. *Cody*, 409 F.3d at 858-59. The district court dismissed Cody's interference with contract claim because the underlying contracts were at-will. *Id.* at 859. On appeal, Cody sought to convert his interference with contract claim to interference with prospective economic advantage. *Id.* The Seventh Circuit rejected his attempt, reasoning that the underlying contracts "could be terminated at any time." *Id.* In contrast, Freight Handler's amended complaint does not suggest that its third-party contracts are terminable at-will. The rationale in *Cody* is therefore inapplicable.

Citing no authority, ALM argues that Freight Handler cannot state a claim for interference with prospective economic advantage because it failed to allege ALM "applied *direct pressure to third parties.*" Def. Mem. 6 (emphasis original). While no court has applied a direct pressure standard, case law does require that Freight Handler allege ALM's conduct interfered with Freight Handler's economic expectancy. *See, e.g., Westland v. Sero of New Haven, Inc.*, 601 F. Supp. 163, 165-66 (N.D. Ill. 1985) (interpreting Illinois law and dismissing an interference with prospective economic advantage claim because plaintiff failed to allege that defendant "interfered with his business opportunities with third parties"). The amended complaint satisfies this requirement. Freight Handler alleges:

    a.    After Freight Handler[] unloaded goods from the trucks onto the dock Advantage Logistics purposefully delayed the removal of the inspected items, thereby interfering with Freight Handler[']s ability to unload additional trucks.

    b.    Advantage Logistic personnel placed unloaded goods into areas which blocked the docks and further hampered Freight Handlers unloading.

    c.    Advantage Logistics deprived Freight Handlers of the necessary equipment to complete it's [*sic*] job.

8

Am. Compl. ¶ 74. Drawing all reasonable inferences in the light most favorable to Freight Handler, Freight Handler may be able to prove a set of facts to support its claim.

The Seventh Circuit's decision in *Adams v. Catrambone* is instructive. 359 F.3d 858 (7th Cir. 2004). Thomas Adams was a 50% owner and vice president of Great Lakes Building Materials, Inc., before he was fired by Richard Catrambone, Great Lake's corporate officer. *Id.* at 861. Adams sued Catrambone for interference with prospective economic advantage. *Id.* Claiming that the reason for his firing was illegitimate, Adams' complaint set forth "that Catrambone interfered with his prospective employment with Great Lakes (the third party), and the future economic advantages it entailed." *Id.* at 865. The district court dismissed Adams' claim "on the ground that Adams had not pleaded that Catrambone acted toward a third party." *Id.* at 861. The Seventh Circuit reversed, holding that Adams' allegations were sufficient. *Id.* at 865. *Adams* underscores the liberal notice pleading standard – plaintiff need not plead specific acts toward a third party to state a claim for interference with prospective economic advantage. Freight Handler's allegations provide ALM with sufficient notice of the alleged interference. *See id.*

## CONCLUSION

For the reasons set forth above, ALM's motion to dismiss Counts II and III is denied. ALM shall answer these two counts by December 16, 2005.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

November 23, 2005

9